NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNICASA MARKETING GROUP, LLC, | Civil Action No. 04-4173 (PGS) |
| Plaintiff, | |
| v. | |
| MARTHA SPINELLI, AMERICAN DREAM HOME REALTY CORP., d/b/a UNICASA AMERICAN DREAM HOME REALTY, AURELIO ARIAS and JOHN and/or JANE DOE, | |
| Defendants. | |
| AMERICAN DREAM HOME REALTY CORP. and MARTHA SPINELLI, | |
| Defendants/Third Party Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| CARLOS CHAUX, MARLIO CHAUX and UNICASA UNIVERSAL, INC., a/k/a UNICASA UNIVERSAL REALTY CORP. | |
| Third Party Defendants. | |

**SALAS, United States Magistrate Judge,**

## I. INTRODUCTION

Before this Court is plaintiff/third party defendant Unicasa Marketing Group, LLC's and third party defendants Marlio Chaux's and Unicasa Universal Inc.'s (collectively "UMG Parties") informal application for additional documentation regarding damages. For the reasons set forth below, the application is **GRANTED**.

## II. BACKGROUND[1]

On August 27, 2004, plaintiff/third party defendant Unicasa Marketing Group, LLC ("Unicasa Marketing") brought this action against, amongst other parties, defendants/third party plaintiffs Martha Spinelli, American Dream Home Realty Corp. d/b/a Unicasa American Dream Home Realty, American Dream Home Realty (collectively "Defendants") alleging, amongst other things, violations the of Lanham Act arising out of Defendants's use of Unicasa Marketing's Unicasa name and mark. (Op. 2, March 7, 2007).

Within months of registering the Unicasa mark with the United States Patent and Trademark Office on July 8, 1997, Unicasa Marketing entered into an oral agreement with defendant/third party plaintiff American Dream Home Realty Corp. ("ADHR") – an entity founded by defendant/third party plaintiff Martha Spinelli – that granted ADHR the right to use the Unicasa name for its realty business. On July 1, 2002, Unicasa Marketing sent ADHR a licensing agreement establishing written terms that would govern their use of the Unicasa mark. ADHR refused to sign said agreement and continued to use the mark. On April 30, 2004, Unicasa Marketing renewed its request for ADHR to execute a written licensing agreement. Once again, ADHR refused and continued to use the Unicasa mark. Said refusal provoked Unicasa Marketing's May 21, 2004 termination of ADHR's right to use the Unicasa name and mark. Thereafter, ADHR continued to use the mark. (Id. at 2-3)

On March 7, 2007, the Court dismissed Unicasa Marketing's claims against

---

[1] For a detailed overview of the facts and procedural history, the Court refers to Judge Sheridan's March 7, 2007 Opinion and limits this discussion to facts germane to this discovery dispute. (Op., March 7, 2007, Docket Entry # 76).

Aurelio Arias. (Op. 13, March 7, 2007). In denying the balance of relief sought through Unicasa Marketing's and the Defendants's respective motions for summary judgment, the Court highlighted the existence of "numerous factual disputes." (See id. at 2, "[d]espite numerous factual disputes, both parties herein move for summary judgment"). On March 21, 2007, the undersigned assumed case management responsibilities from the Honorable Ronald J. Hedges. In an effort to move this aging civil action toward settlement or trial, the Court conducted a telephone conference on May 14, 2007. At that time, the parties raised the pending discovery dispute regarding the Defendants's production of documents in response to the seventeenth enumerated request for documents set forth in the UMG Parties's request for documents ("Demand 17"). (Certification of Linden E. Thomas, Ex. B, Plaintiff's and Third Party Defendants's Notice for Discovery and Inspection).

       Through the application now before this Court, the UMG Parties argue that Defendants are improperly withholding responsive documents. Specifically, they contend that Defendants are refusing to produce, "ADHR's general ledger, check ledger, bank statements, credit card statements, invoices, and other documents that memorialized ADHR's revenue and costs at the time they received revenue or paid expenses." (Pl.'s Br. 1). The UMG Parties proceed to cite 15 U.S.C. § 1117 and the Third Circuit's decision in *Banjo Buddies v. Renowsky*, 399 F.3d 168, 176 (3d Cir. 2005), amongst other authorities, to illustrate the relevance of these documents. (Id. at 4). Next, the UMG Parties argue that they need the documents that Defendants are refusing to produce to gauge the reliability of the documents that Defendants did produce in response to Demand 17. (See id. at 5-11). The latter category of documents includes a letter from Defendants's accountant and certain tax returns. (See id.) The UMG Parties posit

that they need the withheld documents to verify the conclusions set forth in the documents produced in response to Demand 17. (See id.)

Defendants's opposition begins by acknowledging that they have only produced "tax returns for the applicable period, as well as statements by ADHR's outside accountant as to the amount of ADHR's revenue and profits." (Defs.'s Br. 1). Thereafter, Defendants contend that "Plaintiff's demand for documents is no more than a fishing expedition" before proceeding to explain its offer of conditional access to ADHR's books and records. (Id. at 1-2). Defendants's opposition continues by arguing that ADHR's tax returns are admissible to prove revenue and profits before arguing that this Court does not need to allocate revenues and expenses between infringing and non-fringing activities. (See id. at 2-4). Finally, Defendants argue that the UMG Parties fail to specify any particular information that Defendants have not produced. (See id. at 5).

### III.  DISCUSSION

#### A.  Legal Standard

The relevance inquiry is significantly broader at the discovery stage than at the trial stage. *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J.1990). Pursuant to Rule 26(b)(1),

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to

the discovery of admissible evidence....

Fed. R. Civ. P. 26(b)(1).

District courts construe Rule 26(b)(1) liberally to provide for a "broad vista of discovery." *Tele-Radio Systems Ltd. v. DeForest Elec., Inc.*, 92 F.R.D. 371, 375 (D.N.J.1981) (Fisher, J.); *see also Horizons Titanium Corp. v. Norton Co.*, 290 F.2d 421, 425 (1st Cir. 1961) ("[Rule 26(b)] apparently envisions generally unrestrictive access to sources of information, and the courts have so interpreted it"). Each party is given an opportunity, "to scrutinize all relevant evidence so that each will have a fair opportunity to present its case at trial." *Nestle Foods*, 135 F.R.D. at 104 (*citing Goldy v. Beal*, 91 F.R.D. 451, 454 (M.D.Pa.1981)). Accordingly, a party seeking to withhold documents that fall within this broad definition must do more than accuse the requesting party of launching a fishing expedition. *See Hickman v. Taylor*, 329 U.S. 495, 507-08, 67 S.Ct. 385, 392 (1947)( "[n]o longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case").

While broad, the scope of discovery is not boundless. Rule 26(b)(2)(C) recognizes the potential for abuse and allows this Court to circumscribe the scope of otherwise permissible discovery when:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense o the proposed discovery outweighs its likely benefit, ...

Fed. R. Civ. P. 26(b)(2)(C).

**B.      Analysis**

Because relevance is a function of the issues raised in each case, the Court will begin by identifying the claims and defenses raised here.  This is a trademark infringement action.  Section 35(a) of the Lanham Act provides, "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claim." *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 176 (3d Cir. 2005), *internal quotations omitted*, (*quoting* 15 U.S.C. § 1117(a)).  Stated differently, Unicasa Marketing must proffer evidence of profits generated through the infringing activity.  *See id*.  Moreover, said recovery can be offset by Defendants's proffer of evidence of expenses incurred to generate said profits. *Id.*  Clearly, the books and records that the UMG Parties seek fall within the broad definition of relevance set forth in Rule 26(b)(1).

While Defendants's opposition begins by accusing the UMG Parties of launching a "fishing expedition," they fail to articulate why this Court should deny the application before it. Instead of proving a point that might support denial of the UMG Parties's application (i.e., demonstrating why the Court should invoke Rule 26(b)(2)(C) to limit Plaintiff's pursuit of relevant discovery), Defendants proceed to make one unrelated point (the tax returns are admissible at trial) followed by another (there is no need to allocate revenues and expenses between infringing and non-infringing activities).  Logicians call this technique the fallacy of irrelevance, *ignoratio elenchi*.  *U.S. v. Jannotti*, 673 F.2d 578, 622 (3d Cir. 1982) (Aldisert, J., dissenting) (defining the fallacy of *ignoratio elenchi* with, "[i]nstead of proving point A ..., their argument proves unrelated point B").

First, the fact that ADHR's tax returns are admissible at trial is of no consequence. Defendants fail to cite any authority in support of their incredible contention that a party is justified in withholding relevant documents when that party produces other documents that are admissible at trial. Said authority is not likely to exist as such a rule is antagonistic to the general prohibition against conflating the right to obtain information through discovery with the right to use it at trial. *Nestle Foods*, 135 F.R.D. at 104 ("it is important to distinguish the right to obtain information by discovery from the right to use it at trial").

Likewise, Defendants's second point is completely inapposite. Here, Defendants attempt to distinguish the Third Circuit's decision in *Banjo Buddies* and discredit the UMG Parties's reference to other authorities in arguing that Unicasa Marketing does not need to make an allocation of revenues and expenses between infringing and non-infringing activities. Even if this Court accepted either proposition, the UMG Parties would remain entitled to the relief sought through this application. In short, Defendants's reasoning neither changes the underlying conclusion that Plaintiff seeks discoverable information nor suggests that this Court should exercise its authority to limit discovery pursuant to Rule 26(b)(2)(C).

Finally, Defendants's last point is simply wrong. There, Defendants contend that, "Plaintiff's application does not specify any particular information that Defendants have not produced." Not so. The first paragraph of the UMG Parties's moving brief spells out what Defendants failed to produce in response to Demand 17 with, "the UMG parties seek ADHR's general ledger, check ledger, bank statements, credit card statements, invoices, and other documents that memorialized ADHR's revenue and costs." (Pl.'s Br. 1).

## IV.  CONCLUSION

For the reasons set forth above, the UMG Parties's informal application for additional documentation regarding damages is **GRANTED**.

## ORDER

**THIS MATTER** having come before this Court by way of plaintiff/third party defendant Unicasa Marketing Group, LLC's and third party defendants Carlos Chaux's, Marlio Chaux's, and Unicasa Universal, Inc.'s application for additional documentation regarding damages; after considering the moving, opposition, and reply papers without oral argument, Fed. R. Civ. P. 78; and for good cause showing;

**IT IS on this 15th day of August, 2007**,

**ORDERED THAT** plaintiff/third party defendants Unicasa Marketing Group, LLC's and third party defendants Carlos Chaux, Marlio Chaux, and Unicasa Universal, Inc.'s informal application for additional documentation regarding damages is **GRANTED**; and it is

**FURTHER ORDERED** that defendants/third party plaintiffs American Dream Home Realty Corp. and Martha Spinelli shall produce American Dream Home Realty Corp.'s general ledger, check ledger, bank statements, credit card statements, invoices, and other documents that memorialized American Dream Home Realty Corp.'s costs at the time they received revenue or paid expenses for the time period that includes May 21, 2004 through the present.

s/ Esther Salas
**ESTHER SALAS**
**UNITED STATES MAGISTRATE JUDGE**